

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:25-cv-302

Charity Mainville,

    Plaintiff,

v.

Anna de Santis, and De Santis Rentals, LLC, Defendants

**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE 59(e)**

## INTRODUCTION

Plaintiff Charity Mainville respectfully seeks reconsideration of the Court's July 7, 2025 Order (Doc. 15) denying her Rule 72(a) objection, on grounds of manifest legal error, selective enforcement of procedural rules, and violations of due process, equal protection, and First Amendment guarantees. The ruling is not only clearly erroneous—it is offensive to the principles of fairness and impartiality that this Court is sworn to uphold.

## GROUNDS FOR RECONSIDERATION UNDER RULE 59(E)

### Manifest Legal Errors Regarding Referral Authority and Magistrate Jurisdiction

The court's reliance on Standing Order No. 21 and Local Rule 72.2 is misplaced. Standing Order No. 21 pertains exclusively to internal case assignment protocols and does not address or satisfy the statutory

1

requirement under 28 U.S.C. § 636(b)(1)(A) for the judicial designation of a magistrate judge to determine pretrial matters. The statute explicitly requires that a *judge* of the court "may designate a magistrate judge to hear and determine any pretrial matter pending before the court," subject to enumerated exceptions and the right of review where the magistrate's order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

Plaintiff's objection did not stem from a misunderstanding of Local Rule 72.2, but rather from the absence of a formal, docketed order by the District Judge designating the magistrate for referral of contested pretrial motions. The Court incorrectly concluded that no formal order was required under 28 U.S.C. § 636(b)(1)(A). While Local Rule 72.2 permits clerks to act "in compliance with the instructions of a District Judge," it cannot displace the statutory requirement that a magistrate judge be "designated" by a district judge. No such designation was docketed, referenced in the record, or confirmed with specificity. Reliance on internal, undisclosed instructions contradicts both the statutory mandate and basic principles of procedural transparency.

Furthermore, the court failed to address that the docket entries for Plaintiff's urgent motions (Docs. 11 and 13) explicitly showed that the motions were referred to Judge William L. Osteen, Jr.—not to Magistrate Judge Auld. It was only after Plaintiff called the Clerk's Office to inquire about the irregularity that the docket was retroactively modified on June 5, 2025, to state: "Modified on 6/5/2025 to correctly reflect the Referral Judge. Docket entry inadvertently reflected motions were referred to William L. Osteen, Jr." This change occurred *after* the magistrate had already issued rulings.

Additionally, when Plaintiff contacted the case manager for clarification, she did not assert that the assignment was done under the instructions of a district judge. Instead, she stated that the motions were simply assigned "to the judge who has the authority," further reinforcing the absence of a judicial designation required under both statute and rule. In a civil rights case clarity and adherence to lawful referral procedures are not optional. The failure to follow the statutory and procedural requirements for referral constitutes manifest legal error and voids any authority the magistrate judge may have purported to exercise under § 636(b)(1)(A).

Plaintiff respectfully clarifies that the quotations in Doc. 14 at 5-6 were not intended to represent verbatim excerpts from *Coffin v. Murray*, *Davis v. Scott*, or *Mathews v. Weber*, but rather to emphasize core legal principles derived from those decisions. The use of quotation marks was stylistic—to denote a synthesized summary of the holdings—not deceptive. Each cited case supports the proposition that magistrate judges lack inherent jurisdiction and must act only through proper judicial designation under 28 U.S.C. § 636(b)(1)(A). To the extent the Court interpreted the formatting as an attempt to directly quote the text, Plaintiff apologizes for any confusion but maintains that the legal interpretation remains accurate.

Yet, if the Court intends to hold Plaintiff to strict formatting standards—such as a misunderstanding over quotation marks filed under pressure for the third time—as a basis to disregard binding precedent or avoid engaging with substantive legal arguments, such selective scrutiny raises serious concerns about fairness and impartiality. Elevating form over substance in a pro se civil rights matter risks reinforcing the very procedural inequities this motion seeks to remedy. The Code of Conduct for United States Judges explicitly states: "*The duty under Canon 2 to act in a*

*manner that promotes public confidence in the integrity and impartiality of the judiciary applies to all the judge's activities, including the discharge of the judge's adjudicative and administrative responsibilities."* It further requires that *"[t]he duty to be respectful includes the responsibility to avoid comment or behavior that could reasonably be interpreted as harassment, prejudice, or bias."* The Court's comment does all three.

### The Court's Interpretation of Local Rule 7.3(a) And (k) is Legally Erroneous and Selectively Enforced

The Court's July 7, 2025 Order contains multiple legal errors in its interpretation and application of Local Rule 7.3(a) and (k), and demonstrates selective enforcement that violates Plaintiff's right to procedural fairness. Plaintiff's renewed motion for CM/ECF access (Doc. 9) was denied on procedural grounds, including the alleged failure to file a separate brief or cite legal authority. Yet similarly situated litigants have not faced this same level of scrutiny, making the enforcement in this instance selective and pretextual.

First, Plaintiff properly interpreted Local Rule 7.3(a) as governing substantive adversarial motions requiring responsive briefing. The Rule states, "All motions, unless made during a hearing or at trial, shall be in writing and shall be accompanied by a brief except as provided in section (j) of this rule." If the Court intends to adopt the position that *all* motions not explicitly exempted in LR 7.3(j) require a separate brief, then motions for in forma pauperis—which are also not listed—would also violate 7.3(a). Moreover, all of Plaintiff's motions at issue in her Rule 72 objection fall under LR 7.3(j)(10) ("for relief sought to which all parties to the action consent"), as no response was required and Plaintiff is the only party

4

involved, including with respect to this motion. Her filings, therefore, complied both in form and substance and showed good cause.

The citations to unrelated cases are also misleading. *Nagarajan v. Petrie Constr. LLC*, No. 1:24CV897, 2024 WL 5443164 (M.D.N.C. Dec. 4, 2024), cited for failure to provide a brief or cite caselaw, involved a motion for a temporary restraining order—a dispositive motion—unlike Plaintiff's non-dispositive procedural motions. Both *Fox R.S. v. Chapel Hill-Carrboro City Sch.*, No. 1:22-CV-952, 2025 WL 976922, and *Johnson v. Goodwin*, 722 F. Supp. 3d 598, 603 (M.D.N.C. 2024), involved complex, adversarial litigation with over 100 docket entries each. The Court did not specify which motions were referenced, leaving Plaintiff to guess or incur financial burden to access records. Plaintiff could not locate any filings in those cases addressing electronic filing or alternative service. Had Plaintiff cited precedent so vaguely, she would likely have faced criticism. The Court should be held to the same standard of precision it demands from litigants.

Plaintiff also noted a pattern of inconsistent application of Rule 7.3(k) by the same magistrate judge. This was not to assert precedent, but to show irregular enforcement and potential bias. While Rule 7.3(k) gives courts discretion to summarily deny noncompliant motions, it does not allow discretion to become disparity—especially where access to court processes is at stake and applied punitively toward a pro se civil rights litigant.

The claim that Plaintiff failed to object to the magistrate judge's alternative bases for denial is also flawed. Rule 72(a) does not require objections to be exclusive. It provides that the district judge "must consider timely objections and modify or set aside <u>any part</u> of the order that is clearly erroneous or contrary to law." Plaintiff clearly objected to the reasoning and the selective rule enforcement. A district court's obligation

5

to evaluate a magistrate's ruling is independent, particularly where material misapplication of law is involved.

For these reasons, the Court's interpretation and enforcement of Local Rule 7.3 in this matter constitutes manifest legal error and should be reconsidered under Rule 59(e).

**The Denial of CM/ECF Access Constitutes a Denial of Court Access Under the First and Fourteenth Amendments**

The Court stated that Plaintiff "did not heed the Magistrate Judge's prescribed course of action," yet Plaintiff's renewed motion was filed after the initial denial and with the understanding that "a future motion" would be entertained. The Magistrate Judge gave no guidance on timing, what would constitute "demonstrated competency," or what additional information was expected. Plaintiff reasonably believed that refiling at the next procedural juncture constituted compliance.

The Court also criticized Plaintiff for failing to cite legal authority to support her assertion that no further burden of proof should apply. However, Rule 5(d)(3) of the Federal Rules of Civil Procedure and Local Rule 5.3(c)(2) place discretion with the Court, not a legal burden on the requesting litigant. There is no rule-based requirement for pro se parties to provide legal citations to obtain CM/ECF access, nor did the Court or Magistrate articulate any specific standard for what constitutes sufficient "competence." The rules also make clear that attorneys may be denied or revoked CM/ECF access for failure to comply with the rules—demonstrating that the presumption is access unless misused, not that a license or threshold showing is required to obtain it. Plaintiff has complied with every

6

procedural rule, and any implication to the contrary reflects selective enforcement—not a valid basis for denial.

If this Court is going to require evidence of "competence" from a pro se litigant seeking CM/ECF access, Plaintiff respectfully expects that the same standard will be applied in its assessment of Defendant's conduct in the related § 1983 claim. Unequal enforcement of procedural competence would reflect discrimination rather than neutrality.

The Court further asserted that Plaintiff failed to provide sufficient information about her disabilities to support a meaningful assessment. But there is no requirement that a litigant disclose private medical diagnoses to obtain electronic filing access nor was it requested. The nature of this action includes claims of disability discrimination under the Fair Housing Act. To imply that CM/ECF access hinges on disclosing diagnosis-specific information would compel waiver of rights and violate the spirit of both the ADA and fair access doctrine.

Finally, the Court's suggestion that Plaintiff is not denied access because she "continues to freely litigate" ignores the reality of the burdens imposed. Plaintiff must incur repeated printing, mailing, and courier expenses, and drive over an hour each way to the courthouse—at significant financial and physical strain. This is not "free" litigation; it is conditional access subject to undue hardship. Plaintiff should not be expected to weather hurricanes just to file routine motions. Denial of CM/ECF access, when not justified by rule violations or defined standards, operates

7

as a de facto restriction on court access—contrary to both the First and Fourteenth Amendments.[1]

### The Court's Mischaracterization of Plaintiff's Efforts to Effectuate Service and Improper Dismissal Threats

Plaintiff respectfully objects to the Court's mischaracterization of her efforts to effect service of process and the implied threat to dismiss the action under Rule 4(m). Contrary to the Court's statement, Plaintiff has already undertaken multiple good faith efforts to serve Defendants and detailed those efforts under penalty of perjury in her motion for expedited and alternative service (Doc. 11). These efforts included submitting summonses to the sheriff's office, which confirmed multiple attempts with failed service report mistakenly filed in Durham County Court due to deputy error (See Exhibit A); sending certified mail with tracking showing it lost in transit (Doc. 11, Ex B); and seeking clarification from the Court about alternative reasonable means—not to bypass service, but to comply with the rule where traditional efforts had failed. Plaintiff also provided evidence that Defendant falsely listed her business at a property with which she has no legitimate association (Doc. 11, Ex C). Misrepresenting a business address is not only deceptive—it may constitute legal misconduct. Evasion of service

---

[1] See *Bounds v. Smith*, 430 U.S. 817, 821 (1977) (recognizing the constitutional right of access to the courts may require facilitating the preparation and filing of legal documents). While *Bounds* concerned incarcerated individuals, courts have recognized its broader principle applies to other systemic barriers. Although pro se litigants may submit filings by mail or in person, where doing so imposes significant financial, logistical, or psychological burdens—and where electronic filing is the standard for all others—such differential treatment may functionally impair meaningful access in violation of the First and Fourteenth Amendments. See also *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (access must be meaningful and denial must cause actual injury).

8

is likewise improper, yet this Court's failure to acknowledge these facts effectively rewards that behavior and undermines the rule of law.

It is disingenuous to claim Plaintiff's motion "falls far short" of establishing facts requiring action by the Court when the Magistrate Judge offered no specific reasoning beyond vague conclusions and failed to engage with the evidence or circumstances. More troubling is the statement that Plaintiff's difficulty effectuating service "undermines" her claims of immediate harm. The merits of a Fair Housing Act or ADA claim are not conditioned on flawless execution of procedural service within 90 days where there is documented diligence and documented delay beyond her control. Rule 4(m) expressly allows for good cause, and Plaintiff has both demonstrated it and preserved the record to show it. Furthermore, Plaintiff paid $405 to file this case in good faith, and to allow those efforts and funds to be discarded without judicial engagement would not only be inequitable—it would amount to constructive denial of access to the courts.

The Court's warning that future filings may be ignored absent service is premature and procedurally unjust. It would effectively silence a pro se litigant who is actively attempting to comply and transparently reporting all developments. Plaintiff is not evading service obligations—she is actively navigating barriers and requesting clarity or permission to proceed with alternate service when traditional methods have failed. Ignoring those facts undermines both fairness and the Court's duty to facilitate access to justice.

Additionally, Plaintiff is currently preparing an amended complaint that will remove the Title II claim and clarify the legal basis of the action. Plaintiff also intends to add the same Defendant to her pending §1983 action and will attempt service again in connection with both cases. These

9

efforts reflect a good-faith commitment to proper procedure, not delay or evasion.

## JUDICIAL CONDUCT, CANON VIOLATIONS, AND INSTITUTIONAL CONFLICT

This Court's ruling is not one grounded in law or impartial merit but rather appears to have been crafted to discredit the undersigned while shielding judicial colleagues from scrutiny. This is now the second motion Plaintiff has been forced to file to challenge rulings by this District Judge that prioritize institutional preservation over statutory clarity and due process. The pattern reflects not neutrality, but a consistent alignment with peer protectionism—contrary to the duties imposed by Article III, the Code of Conduct for United States Judges, and the judge's own words.

During his nomination hearing, Judge Osteen affirmed the following:

*"I have friends, both inside and outside the legal profession, whose relationships are very important to me. If, in my opinion, those personal relationships affect the impartiality, or the appearance of impartiality, of the Court, then the Court is responsible for candidly acknowledging that issue and recusing itself from a case."*[2]

He further committed that:

*"If confirmed, I will carefully follow the Code of Conduct for United States judges and applicable statutes, as well as policies and procedures promulgated by the Judicial Conference."*

Yet in this matter, those standards were not met. Plaintiff raised procedural concerns and disability-related barriers, only to be met with dismissal and the blanket assertion that "the ADA does not apply to federal

---

[2] Statement of Judge William L. Osteen Jr., U.S. Senate Judiciary Committee Hearing, June 20, 2007, https://www.congress.gov/nomination/110th-congress/25.

courts." Such deflection contradicts not only the Judicial Conference accessibility guidance, but also the spirit of judicial decency and the duty under Canon 2 to "*act in a manner that promotes public confidence in the integrity and impartiality of the judiciary.*" Dismissing clear institutional misconduct while suggesting Plaintiff's pro se filings reflect incompetence is not impartial—it is punitive.

In a separate Rule 59(e) motion, Plaintiff has already made clear: if this judge feels incapable of litigating a matter fairly or impartially—particularly one involving judicial conduct—he should recuse himself. Plaintiff will not carry that burden for him. She will not file a recusal motion against an Article III judge whose role demands the highest standard of integrity by default. There should be no place in the federal judiciary where recusal becomes necessary—because conduct should not give rise to the need for it.

At his confirmation, the judge stated his aspiration was:

> "*That at the conclusion of my career people would not say that I was a conservative or a liberal judge, but instead would simply say that, 'He followed the law and applied it as appropriate, without regard to any extraneous or irrelevant considerations.'*"[3]

This case suggests otherwise. Favoring peer protection over judicial accountability is an "extraneous consideration." So too is undermining pro se litigants who raise legitimate constitutional grievances, simply because they lack the institutional affiliation to be heard otherwise in violation of Canon 3 that "*A judge should be patient, dignified, respectful, and courteous to litigants… A judge should require similar conduct by those subject to the*

---

[3] Osteen Statement, supra note 2

11

*judge's control, including lawyers to the extent consistent with their role in the adversary process."*

Plaintiff also notes the troubling timing of this ruling. On the same day Plaintiff communicated concerns about judicial conduct to the Clerk's Office—after having previously filed administrative complaints—this Court issued a harsh and dismissive ruling that went beyond legal reasoning and appeared retaliatory in tone and content. While correlation does not prove intent, the sequence raises legitimate concerns about impartiality and whether Plaintiff is being penalized for asserting her rights. Such timing, particularly when the ruling fails to engage substantively with core arguments, undermines public confidence and suggests a breach of the Code of Conduct's mandate to avoid even the appearance of bias or retaliation.

As the President who nominated this judge once stated:

"To be a good judge takes a special kind of person. A judge needs to be someone who is learned, <u>someone who has common sense, and someone who has a healthy respect for precedent and the law</u>. In addition, a judge must be independent enough to resist the temptations of politics or favorable treatment in the media … and a judge must be modest enough to appreciate the limited role he plays under the Constitution. This combination of learnedness and independence and modesty is not always easy to find … But it is absolutely essential for a judge."[4]

Whether that combination exists in the Middle District of North Carolina is a question for this Court to answer—not Plaintiff. She will not seek recusal. But if integrity is not restored through the bench, it will be pursued through the court of public opinion. That legacy, too, is part of judicial accountability.

---

[4] George W. Bush, **Remarks at the Federalist Society's 25th Anniversary Gala**, *White House Archives* (Nov. 15, 2007), https://georgewbush-whitehouse.archives.gov/news/releases/2007/11/20071115-14.html.

## RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. **Vacate the July 7, 2025 Order** (Doc. 15) denying Plaintiff's Rule 72(a) objection, and reconsider its findings under Rule 59(e) based on manifest legal error, misapplication of Local Rules, and violations of due process, equal protection, and access to courts;

2. **Grant Plaintiff's Renewed Motion for CM/ECF Access** (Doc. 9), or alternatively, provide clear procedural standards for re-submission, and assure that Plaintiff's request will be evaluated on the merits without discriminatory or punitive conditions;

3. **Acknowledge Plaintiff's efforts to serve Defendants** and permit reasonable time for re-service or allow alternate service methods;

4. **Recognize the ongoing harm caused by selective enforcement, procedural obstruction, and judicial bias,** and take appropriate steps to ensure fair treatment moving forward;

5. **Issue any further relief the Court deems just and proper.**

Respectfully submitted this 10th day of July, 2025.

Charity Mainville
Plaintiff, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608)215-6654
camainville@gmail.com

**CERTFICATE OF SERVICE**

I hereby certify that I filed the attached Motion to Alter or Amend Judgment under Rule 59(e). At this time, no service was made upon Defendant Anna De Santis, as formal service of the summons has not yet been completed. This filing is submitted solely for the Court's review, and no response is required from any defendant at this stage.

This the 10th day of July, 2025.

_____
Charity Mainville
Plaintiff, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608)215-6654
camainville@gmail.com